IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIPMAN BROTHERS, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 13-4439 |
| APPRISE SOFTWARE, INC., | |
| Defendant. | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                 **July 21, 2015**

Plaintiff has brought several claims related to Defendant's alleged failure to provide software that performs as promised. Defendant has moved to dismiss all but the breach of contract claim. Enforcing the choice of law clause to apply Pennsylvania law as to all claims, the Court will dismiss the statutory consumer protection claims but permit the tort and quasi-contract claims to proceed.

Factual and Procedural Background

Plaintiff Lipman Brothers, Inc., is a Tennessee alcoholic beverage distributor. In 2011, Plaintiff began negotiations to have Defendant Apprise Software, Inc., a Pennsylvania company, provide an "Enterprise Resource Planning" software system for use in managing multiple aspects of Plaintiff's business, such as accounting and inventory.

According to the complaint, Plaintiff gave Defendant a document describing expectations for the software in early 2012. Representatives of Defendant went to

Nashville to demonstrate Defendant's pre-built software package; Plaintiff's representatives noted certain specific areas of difficulty and importance in the business's operations, and Defendant's people assured Plaintiff that Defendant's system could handle those issues with minor adjustments. The only exception was Plaintiff's needs for a "bill and hold" system, and after further negotiations the parties agreed to a separate cost for "bill and hold" customization.

Plaintiff also alleges Defendant's representative subsequently asserted that, despite Plaintiff's reservations, it was standard industry procedure to require final payment when the system was installed but before it would go live, and that the system would nevertheless be operational by the time of the final payment with only minor fine tuning left to do. Plaintiff alleges that these assertions turned out to be false.

In May of 2012, the parties executed a Sales Agreement that lists pricing for a set number of users for certain modules of Defendant's pre-built software package, plus first-year software maintenance and some other minor aspects, and the separate cost of the "bill and hold" customization. The sales agreement contains very few terms of its own but appears to incorporate by reference the terms and conditions of separate agreements between the parties. At the same time, the parties entered into those separate agreements, most notably the End-User License Agreement, which is considerably more detailed and contains various provisions of the sort typically seen in major contracts. The relevant terms will be set forth as they arise in the discussion below.

After signing the contracts, Plaintiff engaged a consultant to review its operations. The consultant made some recommendations related to the software project, though Plaintiff alleges there was no material impact. Defendant then made its own follow-up

review of Plaintiff's operation, which revealed some concerns; Plaintiff alleges both that Defendant had previously said these concerns were not a problem for the pre-built software package and that Defendant still maintained the concerns would not affect the timeline. Following these reviews, Defendant indicated it was time to install the system. Plaintiff consented and consequently made the final payment.

A month later, Defendant informed Plaintiff that a variety of changes would have to be made to finish the project, at an additional cost of potentially more than double the original contract price. Completion would also be delayed by a year. Plaintiff alleges no working software system has been delivered in accordance with the contract or other representations.

As a result Plaintiff filed this suit, bringing claims for fraud, negligent misrepresentation, breach of contract, violation of the Tennessee Consumer Protection Act, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and unjust enrichment. Defendant moved to dismiss all but the contract claim.

Pennsylvania Consumer Protection Law Claim

At a conference in this matter, counsel for Plaintiff essentially conceded there is no viable claim under the Pennsylvania UTPCPL because Plaintiff bought the software for business and commercial, rather than consumer, purposes. *See* 73 Pa. Cons. Stat. Ann. § 201-9.2 (West) ("Any person who purchases or leases goods or services primarily for personal, family or household purposes . . . may bring a private action . . . ."); *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002). The Court agrees, and the claim will be dismissed without further discussion.

3

Fraud, Negligent Misrepresentation, and Unjust Enrichment Claims

The analysis in this case must begin with choice of law. The choice of law question has some special issues with regard to the Tennessee Consumer Protection Act claim, which will be addressed separately below. But the parties also dispute the choice of law, and particularly the scope and enforceability of the contractual choice of law provision, as to the tort and quasi-contract claims. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Id.*

The contractual provision appears in the End User License Agreement,[1] and as noted above it does appear to be incorporated into the Sales Agreement:

> 8.3   <u>Governing Law</u>.   This Agreement shall be governed, construed, and enforced in accordance of [sic] the laws of the Commonwealth of Pennsylvania, USA. Both parties agree to personal jurisdiction therein, and agree that any suit brought to enforce this Agreement or based on this Agreement or the business relationship between the parties will be brought in the closest applicable court to Bethlehem, Pennsylvania, USA.

---

[1] Nearly identical language appears in the Software Maintenance Agreement, though it does not include the "Governing Law" heading.

4

Plaintiff argues that because the first sentence of this section, clearly about choice of law, refers only to the Agreement itself, it does not cover the fraud and other claims outside the contract. Defendant argues the first sentence should be read in conjunction with the second, which applies more broadly to "any suit . . . based on . . . the business relationship between the parties," though it seems to refer to forum selection rather than choice of law. The broad language of the second sentence certainly covers all claims in this suit, as there is no question they all arise from the business relationship of the parties. *See Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994) ("Contractual choice of law provisions, however, do not govern tort claims between contracting parties unless *the fair import of the provision embraces all aspects of the legal relationship*." (emphasis added)).

The question, then, is whether the second sentence's broad language applies to choice of law rather than just forum selection.[2] Defendant cites a case featuring a very similar provision in which the court did interpret the two sentences together, including choice of law in the broader language. *See PTI Servs., Inc. v. Quotron Sys., Inc.*, No. CIV. A. 94-2068, 1995 WL 241411, at *8-9 (E.D. Pa. Apr. 19, 1995). The clause there read:

> D. *Governing Law*. This Agreement is made and entered into [in] the State of New York and shall be governed by the laws of that State. The parties hereby consent and submit to the jurisdiction of the state courts of New

---

[2] There would also be some limited basis on which to hold that the first sentence standing alone covers tort claims outside the contract even though it refers to the agreement itself. *See, e.g.,* Whitesell Corp. v. Whirlpool Corp., No. 1:05-CV-679, 2009 WL 3270265, at *2 (W.D. Mich. Oct. 5, 2009) (enforcing choice of law clause as to tort claims where the clause "provide[d] that the 2002 [Strategic Alliance Agreement] 'shall be governed in all respects, including validity, interpretation and effect' by the laws of Michigan."). It is more appropriate, however, to recognize that the first sentence is restricted to claims directly based on "This Agreement." *See Jiffy Lube*, 848 F. Supp. at 576.

> York and the Federal courts located therein with respect to the adjudication of any matter arising hereunder.

*Id.* at *8 (alteration in original). The court did not expressly consider the possibility that the second sentence referred to forum selection rather than choice of law, but found the provision clearly included tort claims within the choice of New York law. *Id.* at *8-9.[3]

It is worth noting that the agreement in the present case does not include a provision, seen in some contracts, holding that headings should be ignored in interpretation of the contract. As such, the Court will follow *PTI Services* in reading the broad language contained in the second sentence of the section labelled "8.3 <u>Governing Law</u>" to express a contractual choice of Pennsylvania law with respect to "any suit . . . based on . . . the business relationship between the parties," including related tort and quasi-contract claims. The Court will enforce this contractual choice and conduct its analysis under Pennsylvania law.[4]

Moving to the gist of the action doctrine, the Pennsylvania Superior Court and federal courts applying Pennsylvania law operate under a well established assumption that Pennsylvania would employ this doctrine to "preclude[] plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). "[T]he gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by

---

[3] In S*KF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432 (E.D. Pa. 2014), the court enforced choice of law based on contract language reading: "[a]ny disputes arising under this Agreement shall be tried in the courts sitting within the Commonwealth of Pennsylvania." *Id.* at 448 n.8. However, the court was focused on the breadth of the language vis-à-vis tort claims, and it is not clear whether the court considered that the language might cover only forum selection rather than choice of law.

[4] Note that the ultimate outcome might well be the same in some respects even if the Court viewed the non-contractual claims under Tennessee law. While Plaintiff makes a strong case for a true conflict between Pennsylvania and Tennessee as to the gist of the action doctrine, for reasons discussed below, the Court will decline to dismiss the tort claims even under Pennsylvania law.

distinguishing between contract and tort claims on the basis of [the] source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000), *on reconsideration in part sub nom.*, 126 F. Supp. 2d 937 (E.D. Pa. 2001). If the non-contract claims are "inextricably intertwined" with and basically duplicative of the contract claims," then the gist of the action sounds in contract, and the plaintiff may not pursue linked tort claims; if, on the other hand, the contract is merely collateral to the tort claims, the tort claims may go forward. *Id.* at 14, 21. "Application of this doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims," *Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013), and "caution should be exercised in determining the gist of an action at the motion to dismiss stage," *Caudill Seed*, 123 F. Supp. 2d at 834.

The fraud and misrepresentation claims Plaintiff raises here are separate from, rather than intertwined with, the contract. The primary reason for this is that the contract as written focuses on delivery of certain products and says extremely little about the capabilities or expectations for those products or about any associated service aspects of the relationship. Several software cases, cited by Defendant because they were held to sound in contract, are distinguishable in this respect; the opinions do not expressly recite the contractual provisions but do indicate that the terms more explicitly covered services and failures to create and provide software that worked as represented. In *Amsan, LLC v. Prophet 21, Inc.*, No. CIV. A. 01-1950, 2001 WL 1231819 (E.D. Pa. Oct. 15, 2001), the

parties "entered into an agreement to purchase the software *according to certain specifications,*" and "full integration with the Prophet 21 back-end database [was] required under the dictates of the Licensing Agreement." *Id.* at *4 (emphasis added). In *Caudill Seed*, the plaintiff "signed an agreement . . . to buy software that worked, and the software (allegedly) did not work," so "[t]he fraud claim turn[ed] on the sufficiency of defendant's performance under the terms of the licensing agreement." 123 F. Supp. 2d at 833. In, *KSM Associates, Inc. v. ACS State Healthcare, LLC*, No. CIV.A. 05-4118, 2006 WL 847786, (E.D. Pa. Mar. 30, 2006), the letter of intent at issue was the prologue to a *services* agreement and contained specific service- and project-oriented provisions regarding the hiring of necessary staff as well as planning and development activities. *Id.* at *1. As such, the court was able to conclude that the alleged failure to produce software that met expectations and accorded with prior representations of the developer's skill and experience breached a "duty to properly perform system development services and create workable software" that "was embodied in the LOI signed by the parties." *Id.* at *3.

      Here, aside from one element of customization (the "bill and hold" system) and some separate software maintenance to be performed after the system was installed, the agreements are about the purchase of enumerated products and do not touch on development services or the software's functionality. The essential nature of the situation is not "defendant contracted to perform certain services and failed to perform them because it was, contrary to representations, incapable of doing so"; in that case, the contractual remedy for failure to perform as agreed would likely be comprehensive, and the duty sued upon would be the duty to perform imposed by the contract. Rather, the situation here is more akin to "defendant contracted to provide certain products, and then

8

provided those products, but the products are not what plaintiff needed despite defendant's misrepresentations that the products would in fact be what plaintiff needed"; in this formulation, the contract does not really have anything to say about the wrong alleged because it tells us what the products are, not what they can do, but there may be a violation of a socially-imposed duty not to lie about a product's quality or suitability in order to get someone to buy it.

Defendant's suggestion that the Sales Agreement actually does say something about the products' ability to handle Plaintiff's needs simply because it lists off several pre-built software modules, the names of which ("General Ledger," "Accounts Payable," etc.) refer to different business processes, is very nearly preposterous. This is just a list of the items being purchased. Across three separate agreements, just about the only representation of what the products will do is a warranty that "the Apprise Programs will materially conform in accordance with the applicable documentation for a period of 90 days," which at least at this stage of the case has little or no definite informational content. These agreements are very spare documents, particularly with respect to the nature and capabilities of the products and any related service aspects. Those issues were allegedly discussed separately, outside the contract, which refers to simply buying the products. Accordingly, the tort claims in this case are not barred by the gist of the action.

The lack of reference to capability and service issues in the contract means the parol evidence rule does not bar Plaintiff's non-contractual claims either. "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms

9

of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004). Courts have broken out the two parts of that rule: "(1) that the written agreement 'contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause.'" *Palermo Gelato, LLC v. Pino Gelato, Inc.*, No. 2:12-CV-00931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013) (quoting *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F.Supp.2d 474, 486 (E.D.Pa. 2009)). Courts have taken "a rather relaxed view of the 'same subject matter' requirement," *id.* at *5, but by the same reasoning described with respect to the gist of the action (the agreement focuses on pre-made software products rather than software development services and contains virtually no terms concerning the functionality of the software), the Court is not convinced at this stage that the agreement in this case concerns the same subject matter as the alleged misrepresentations.

The second requirement for application of the parol evidence rule is also questionable because the integration clause here is less than conclusive. The provision, in both the License Agreement and Software Maintenance Agreement, reads:

> The parties acknowledge that each has read this Agreement, understand it, and agree to be bound by its terms. The parties further agree that this Agreement is the complete and exclusive statement of the Agreement between the parties and supersedes all proposals (oral or written), understandings, representations, conditions, warranties, covenants, and all other communications between the parties *relating to the Apprise Code and documentation*. (emphasis added)

This reference to the "Apprise Code and documentation" is somewhat odd. As noted above, it is not entirely clear to the Court at this point what the "documentation" is. More importantly, "Apprise Code" is a defined term under the License Agreement, meaning "the computer programming code of the Apprise Programs provided under this Agreement which could include source code, object code as well as the associated objects such as image, help, report and database files." It is not clear why the integration clause would relate to this narrower term rather than, say, the broader "Apprise Programs," defined as "the software, programs, and Derivative Works provided to the End-User under this Agreement." Maybe it is a mistake or perhaps the parties did not see it as a significant difference, but the clause could be read to disclaim prior representations specifically about the *code* itself but not more general representations about the overall functionality of the software. Because the contract does not clearly address the relevant subject matter and its integration is uncertain, the parol evidence rule does not warrant dismissal of the non-contract claims at this stage.

The unjust enrichment claim is permissible at this stage as well for similar reasons. *See Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983) (stating that at least under New Jersey law, "[q]uasi-contract liability will not be imposed, however, if an express contract exists *concerning the identical subject matter*" (emphasis added)); *Rizzo v. MSA, Inc.*, No. 06 CV 3330, 2010 WL 9597511, at *8 (Pa. Com. Pl. Nov. 5, 2010), ("Since Rizzo's unjust enrichment claim concerns additional work that was performed outside any promises made in the MSA–Rizzo Agreement, the existence of a written contract between MSA and Rizzo does not preclude Rizzo from recovering on his unjust enrichment claim." (citing *Ruthrauff, Inc. v.*

11

*Ravin, Inc.*, 914 A.2d 880, 893 (Pa. Super. Ct. 2006))), *aff'd*, 32 A.3d 830 (Pa. Super. Ct. 2011), *and aff'd*, 32 A.3d 830 (Pa. Super. Ct. 2011). Moreover, the rules simply permit alternative pleading at this stage. *See* Fed. R. Civ. P. 8(d)(3); *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 445-46 (E.D. Pa. 2013).

Tennessee Consumer Protection Act Claim

      Reiterating from above, the Court applies Pennsylvania choice of law rules, including Pennsylvania's inclination to enforce choice of law clauses, *see Kruzits*, 40 F.3d at 55, and finds the parties here did contractually choose Pennsylvania law, even for non-contract claims. But Plaintiff argues that the Tennessee Consumer Protection Act actually prohibits avoiding its application by use of a choice of law clause:

> Any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act of 1977 and related acts set forth in this title is void as a matter of public policy.

Tenn. Code Ann. § 47-18-113(b) (West).

      The limited case law available mainly supports straightforward application of this clear language. *See Walker v. Frontier Leasing Corp.*, No. E200901445COAR3CV, 2010 WL 1221413, at *5 (Tenn. Ct. App. Mar. 30, 2010) (citing § 47-18-113(b) and stating that "it could not be clearer that such contractual provisions cannot defeat the ability of a Tennessee consumer to bring an action under the TCPA . . . . Thus, if we ultimately

conclude the complaint states a cause of action under the TCPA, we will be compelled to hold that the choice of law and choice of forum do not operate to bar [the plaintiffs'] ability to prosecute this case in the trial court."); *Rutherford Farmers Coop. v. MTD Consumer Grp., Inc.*, 124 F. App'x 918, 920 n.2 (6th Cir. 2005) ("Under Tennessee Code Annotated sections 47-25-1312 and 47-18-113, we do not enforce the contract's Ohio choice-of-law provision but instead apply Tennessee law . . . ."). The opinion in *Encore Medical, L.P. v. Jay Kennedy, D.C.*, No. CIV.A. 3:12-58, 2013 WL 839838 (W.D. Pa. Mar. 6, 2013), addresses the issue and does its best to understate the strictness of the statutory provision by arguing that the TCPA only applies to the wrongdoing of persons who are themselves located in Tennessee. *See id.* at *30. But that sentence of the statute seems to refer specifically to action taken by the Tennessee attorney general. *See* Tenn. Code Ann. § 47-18-113(b). The TCPA generally may only apply to *conduct* that occurs within Tennessee, *see Encore Med.*, 2013 WL 839838, at *30-31, but at least some of the misrepresentation alleged in the present case occurred during a visit by Defendant's representatives to Nashville. Defendant is correct that Plaintiff's primary citation, *Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*, No. 3-10-1043, 2012 WL 370486, (M.D. Tenn. Feb. 3, 2012), is not really on point because the choice of law language there clearly did not cover non-contract claims, but the case does cite the above statutory section as basic authority for applying Tennessee law to the claims not covered by the choice of law clause. *See id.* at *2. Two other cases cited by Defendant do not actually address the statutory provision at issue. *See Tritt v. Category 5 Records, LLC*, 570 F. Supp. 2d 977, 980-81 (M.D. Tenn. 2008); *B.J. Tidwell Indus., Inc. v. Diversified Home*

*Products, Inc.*, No. SA-06-CA-264-FB, 2008 WL 559546, at *5 (W.D. Tex. Jan. 29, 2008).

Even assuming the TCPA operates as written to void choice of foreign law, though, Pennsylvania courts are not absolutely required to follow Tennessee's laws. The Supreme Court has "held that the Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Franchise Tax Bd. of California v. Hyatt*, 538 U.S. 488, 494 (2003) (quoting *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988)). *See also Klaxon*, 313 U.S. at 498 ("Nothing in the Constitution ensures unlimited extraterritorial recognition of all statutes or of any statute under all circumstances."). Pennsylvania is surely competent to legislate regarding consumer protection and whether to prohibit related choice of law clauses, so Tennessee cannot force Pennsylvania to apply its consumer protection law simply by including a statutory provision that voids contractual choice of law.

Would Pennsylvania courts nevertheless choose to follow the Tennessee statute and override the contractual choice of law? In addition to a general policy of enforcing choice of law clauses, Pennsylvania applies Restatement (Second) of Conflict of Laws § 187:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*See Kruzits*, 40 F.3d at 55; *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984). As for part (1), there is some circularity here because the "particular issue" in question is the availability of the TCPA claim; if Tennessee law applies, the parties are not permitted to avoid the TCPA by an explicit provision in their agreement, but if Pennsylvania law applies, they may do so. So part (1) does not clearly resolve the question. Under part (2)(a), both states have substantial relationships to the parties and transaction. So under (2)(b), Pennsylvania would enforce the contractual choice and apply Pennsylvania law unless Tennessee[5] has a contrary fundamental policy and a materially greater interest. Tennessee's policy of voiding choice of law with respect to

---

[5] Assuming for sake of argument that Tennessee would be the state of applicable law in the absence of an effective contractual choice, either because of the TCPA provision voiding choice of law or the test of Restatement (Second) of Conflict of Laws § 188.

consumer protection claims probably is fundamental. *See New England Surfaces v. E.I. du Pont de Nemours & Co.*, 546 F.3d 1, 10 (1st Cir.) (addressing similar issues with regard to Connecticut's Franchise Act), *decision clarified on denial of reh'g*, 546 F.3d 11 (1st Cir. 2008). But Tennessee does not appear to have a materially greater interest. Tennessee law protects Plaintiff, a Tennessee company, but Pennsylvania law protects Defendant, a Pennsylvania company. Pennsylvania generally prefers to enforce contractual choice of law, has not chosen to vary that policy in the consumer protection context, and has also decided not to subject potential Pennsylvania defendants to consumer protection claims brought by commercial entities rather than proper consumers. This Court concludes that Pennsylvania would not enforce this foreign statute and would instead enforce the parties' contractual choice. So Pennsylvania law does apply in this case despite the TCPA provision, and therefore no TCPA claim is available.

Conclusion

In sum, the breach of contract claim goes forward because it was not challenged. The Pennsylvania UTPCPL claim will be dismissed because the purchase was for business purposes. The fraud and negligent misrepresentation claims survive because neither the gist of the action doctrine nor the parol evidence rule bars them, at least not at this stage. The unjust enrichment claim will not be dismissed because it may cover issues outside the contract and Plaintiff is permitted to plead in the alternative. Finally, the TCPA claim fails because Pennsylvania law applies.